J-A15044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KIREE GOLDEN :
:
Appellant : No. 1696 EDA 2020

Appeal from the PCRA Order Entered October 26, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010170-2009

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED SEPTEMBER 17, 2021**

Kiree Golden ("Golden") appeals from the Order dismissing his Petition

for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42

Pa.C.S.A. §§ 9541-9546. We affirm.

This Court previously summarized the relevant factual history as

follows:

> During the evening of February 5, 2008, Kuame Burkett
> ("Burkett") was shot and killed. Burkett was with a number of
> friends outside of a corner store located at the intersection of
> Brown and 16th Streets in Philadelphia when Golden and two other
> men, Iyube Bundy and Mathew Bundy, approached the corner.
> Burkett, who had been horsing around with one of his friends, ran
> a short distance down the block and sat on a set of steps. Shortly
> thereafter, Golden approached Burkett, shot him multiple times
> and fled. As Golden fled, Iyube Bundy approached Burkett, also
> shot him multiple times[,] and fled in the same direction as
> Golden. Burkett was shot in his head, chest, lower back[,] and
> right thigh. He died from these gunshot wounds.

Golden, Iyube Bundy and Mathew Bundy were tried together before a jury in June 2012. Golden was found guilty of [first-degree murder, conspiracy to commit murder, and carrying firearms on public streets in Philadelphia. **See** 18 Pa.C.S.A. §§ 2502(a), 903, 6108]. He was subsequently sentenced to life imprisonment for the first-degree murder conviction, and no further penalty was imposed for the remaining convictions. Golden filed post-sentence [M]otions, which the trial court denied. …

***Commonwealth v. Golden***, 87 A.3d 895 (Pa. Super. 2013) (unpublished memorandum at 1-2). This Court affirmed Golden's judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal. ***See id.***, ***appeal denied***, 89 A.3d 1283 (Pa. 2014).

On April 22, 2015, Golden, *pro se*, filed the instant timely PCRA Petition. The PCRA court appointed Golden counsel. Following several continuances, PCRA counsel filed an Amended PCRA Petition on April 19, 2018, raising a claim of after-discovered evidence. Specifically, Golden points to the discovery of criminal offenses committed by Philadelphia Police Detective Ronald Dove ("Detective Dove"), who was involved in the investigation of Golden's case. In support of this claim, counsel attached to the Amended PCRA Petition several newspaper articles concerning Detective Dove's involvement following a homicide committed by Detective Dove's girlfriend, and his subsequent guilty plea.[1] Golden requested an evidentiary hearing to

---

[1] In April 2017, Detective Dove pled guilty to several crimes relating to hindering prosecution and tampering with evidence in the investigation of his girlfriend.

develop evidence that Detective Dove improperly had influenced witnesses to provide false testimony at trial. The Commonwealth filed a Response, asserting that Golden's claim concerning Detective Dove was unsupported and undeveloped. Following appropriate Notice, the PCRA court dismissed Golden's case without a hearing.

PCRA counsel failed to file an appeal on Golden's behalf. Accordingly, Golden sought, and the PCRA court granted, permission to file an appeal, *nunc pro tunc*. On July 23, 2019, Golden filed a *pro se* Motion for appointment of counsel, but the PCRA court did not rule on the Motion. The PCRA court appointed Golden counsel, and on August 27, 2020, again granted Golden permission to file an appeal, *nunc pro tunc*. This appeal followed.

Golden raises the following issue for our review:

Did the PCRA [c]ourt err and/or abuse its discretion when it denied and dismissed [Golden's P]etition filed under the PCRA without a hearing, where [Golden] presented a meritorious claim that a new trial is warranted based upon newly discovered and available evidence?

Brief for Appellant at 5.

Golden claims that Detective Dove was convicted of numerous *crimen falsi* offenses, relating to obstruction of an unrelated homicide investigation. *Id.* at 23. Golden argues that

[a] central piece of the Commonwealth's case in the matter *sub judice* was a written statement prepared by Detective Dove[,] which asserted that Duane Freeman [("Freeman")] witnessed the murder at issue and identified [Golden] as the shooter. At trial, Freeman testified that he did not see the shooting, did not identify

- 3 -

[Golden] as the shooter, and did not sign the documents prepared by Detective Dove inculpating [Golden].

*Id.*

Golden contends that information regarding Detective Dove's crimes was not available at the time of Golden's trial, because Detective Dove had engaged in efforts to conceal his crimes, and the related grand jury proceedings were concealed from the public. *Id.* at 31-32. Golden contends that "the proffered evidence directly undermines a cornerstone piece of evidence[,]" because the Commonwealth presented evidence from only three individuals, including Freeman, who had identified Golden as a shooter. *Id.* at 32-33. Golden points to alleged credibility concerns regarding the other two witnesses. *Id.* at 33-36. Golden asserts that Freeman's written statement, prepared by Detective Dove, provided that Freeman knew Burkett and the three defendants prior to the shooting, and that Freeman identified Golden as the shooter. *Id.* at 36. However, Golden asserts, Freeman recanted his written statement during trial, testifying that he did not witness the shooting, and the signature appearing on the photo array to identify Golden did not belong to Freeman. *Id.* at 36-37. Golden also claims that the Commonwealth introduced evidence that Freeman had been convicted of drug-related felonies, and argues as follows:

[T]he jury was left to decide between the exculpatory testimony from a convicted drug dealer, or the written statement prepared by a homicide detective. Had the jury been presented with evidence that the homicide detective himself had pled guilty to a litany of misdemeanors and felonies which involve dishonesty,

there is a reasonable probability that their decision of which version to accept would have changed.

*Id.* at 37. Further, Golden claims that evidence of Detective Dove's criminal activities would not solely be used for impeachment purposes. *Id.* at 38. Rather, Golden asserts that such evidence corroborates Freeman's testimony that the written statement prepared by Detective Dove was inaccurate. *Id.* at 39.

In reviewing the denial of PCRA relief, we adhere to the following standard:

> Our standard of review in a PCRA appeal requires us to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court. … The PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020) (citations omitted).

> To obtain relief on an after-discovered evidence claim, a defendant
>
> must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) (citation omitted).

In his Amended PCRA Petition, Golden merely attached newspaper articles concerning Detective Dove's guilty plea stemming from helping his girlfriend escape prosecution. *See Commonwealth v. Brown*, 134 A.3d 1097, 1108 (Pa. Super. 2016) (stating that "allegations in a newspaper article do not constitute evidence…." (quotation marks omitted)). Golden did not otherwise identify evidence he would produce at an evidentiary hearing in support of his claim, nor did he specifically allege that Detective Dove committed misconduct *in this case*. *See id.* at 1109 (rejecting the appellant's after-discovered evidence claim, which similarly relied on the allegations against Detective Dove, because the appellant relied solely on newspaper articles and did not "articulate what evidence he would present at the evidentiary hearing").

Additionally, Detective Dove did not testify at Golden's trial.[2] Nevertheless, Golden suggests that, if presented with evidence of Detective Dove's misconduct, "it is nearly certain that at least one juror would have accepted Freeman's sworn in-court testimony over [Detective] Dove's written version of an oral statement that Freeman denied making." Brief for Appellant at 37-38. In these circumstances, Golden has failed to establish that such

---

[2] Indeed, it appears that Detective Dove's only involvement in this case was conducting the interview of Freeman, along with another detective, and typing Freeman's statement as he spoke. *See* N.T., 6/21/12, at 31 (wherein Philadelphia Police Detective Thorsten Lucke testified that he and Detective Dove hadinterviewed Freeman, and Detective Dove had recorded the questions and answers verbatim).

evidence would not be used solely for impeachment purposes. Further, because there is no evidence that Detective Dove acted inappropriately in this case (in which he had only minimal involvement), Golden failed to establish that the introduction of evidence concerning Detective Dove's convictions would lead to a different result. Accordingly, Golden is not entitled to relief on his claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2021